```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
AMERICAN PACIFIC ENTERPRISES, LLC   :   05 Civ. 3684 (JCF)
                                    :
            Plaintiff,              :        OPINION
                                    :       AND ORDER
     - against -                    :
                                    :
CELADON TRUCKING SERVICES, INC.,    :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This case concerns a contract for the shipment of goods. The shipper, plaintiff American Pacific Enterprises, LLC ("American Pacific"), alleges that the carrier, Celadon Trucking Services, Inc. ("Celadon"), breached their contract by failing to transport cargo in good condition. American Pacific now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the plaintiff's motion is granted.

Background

On May 29, 2003, American Pacific purchased 3,330 cartons of cotton sheet sets from Kaltex Home S.A. de C.V. ("Kaltex Home") for the price of $88,232.79 (the "June 6 shipment"). (Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1(a) ("Pl. Rule 56.1 Statement"), ¶ 1). American Pacific contracted with Celadon to ship the goods by truck from Laredo, Texas to an American Pacific facility in Grove City, Ohio. (Pl. Rule 56.1 Statement, ¶ 2). Celadon took possession of the shipment on May

1

30, 2003. (Dufour Laskay & Strouse, Inc. Report No. 03-9363 ("DLS Report"), attached as Exh. 1 to the Declaration of Thomas O'Keefe dated Feb. 15, 2006 ("O'Keefe Decl."), at 1). On June 6, 2003, the tractor trailer carrying the shipment overturned and caught fire. (DLS Report at 1). The local fire department responded and extinguished the fire, but the cargo sustained fire, smoke, and water damage. (O'Keefe Decl., at ¶ 5); DLS Report at 1-2). The damaged trailer and its contents were brought from the accident site to the Rush Truck Center ("Rush") in San Antonio, Texas. (DLS Report at 1-2).

On July 9, September 16, and October 27, 2006, Thomas O'Keefe, a marine surveyor with Dufour Laskay & Strouse, Inc. ("DLS"), examined the contents of the damaged trailer. (O'Keefe Decl., ¶ 3). Mr. O'Keefe determined that the cartons of sheets had been damaged too extensively to distribute to conventional retail outlets. (O'Keefe Decl., ¶ 6). The cargo was then removed to Houston, Texas, while DLS canvassed the salvage market and sought competitive bids. (DLS Report at 2-3). Celadon was invited to participate in the process of determining the salvage value of the cargo but did not offer any alternative recommendations. (DLS Report at 3). The highest bid was submitted by Front Street Commodities Corporation ("Front Street") in the amount of $19,156.00. (O'Keefe Decl., ¶ 7; DLS Report at 3).

After the bid process, DLS conducted an independent tally of the damaged cargo and confirmed that there were 2,375 cartons of sheet sets at the storage facility in Houston. (DLS Report at 3).

According to the DLS Report, the missing 955 cartons "can reasonably be attributed to the fire and/or being lost/pilfered in the clean up operation following the alleged truck accident." (DLS Report at 3).

Celadon claims, instead, that 142 of the 955 cartons not sold to Front Street were delivered to American Pacific in Grove City, Ohio on November 24, 2003. (Declaration of Dean Shannon Severs dated April 7, 2006 ("Severs Decl."), attached to Affirmation of Steven J. Mines dated April 7, 2006 ("Mines Aff."), ¶¶ 2-5; Report of MTI Inspection Services dated Nov. 26, 2006 ("MTI Report"), attached as Exh. B to Severs Decl.). Celadon has submitted to the Court a copy of a fax cover sheet sent on July 31, 2003, by Dean Shannon Severs of Celadon to Jayson Martin at American Pacific confirming the parties' alleged agreement that most of the cargo had not been damaged. (Severs Decl., Exh. B). Finally, Celadon disputes that the DLS survey was "fair, reasonable and the best available means to minimize the loss." (Mines Aff., ¶ 4 (citing O'Keefe Decl., ¶ 7)).

American Pacific is seeking $72,023 in damages, which it calculates as the invoice value of the cargo ($88,232.79), less the salvage value ($19,156.00), plus the survey fee ($2,947.14). (Pl. Rule 56.1 Statement, ¶ 6).

Discussion

A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions,

3

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Andy Warhol Foundation for Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999); Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). Summary judgment is appropriate where the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words,

> a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.

Id. at 323.

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Id. Where the moving party meets that burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

4

(1986); Vann v. City of New York, 72 F.3d 1040, 1048-1049 (2d Cir. 1995). But the court must inquire whether "there is a sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (punctuation and citations omitted); see also Matsushita Electric Industrial Co.v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (a moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving part, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

B. Liability

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 314706, governs the liability of a common carrier that has entered into a transportation contract, or bill of lading, with a

5

shipper or seller of goods. Although the truck carrying the cargo in this case did not travel outside the State of Texas, the Carmack Amendment governs because the shipment was traveling in interstate commerce. See Project Hope v. M/V Ibn Sina, 250 F.3d 67, 75 (2d Cir. 2001). To establish a claim for liability under the Carmack Amendment, the plaintiff must demonstrate that the cargo was "deliver[ed] in good condition, arriv[ed] in damaged condition, and the amount of damages." Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964). If the plaintiff can prove those elements, then "the carrier is liable 'for the actual loss or injury to the property' it transports, 49 U.S.C § 14706(a)(1), unless there is an available defense." Sompo Japan Insurance Co. of America v. Union Pacific Railroad Co., __ F.3d __, No. 04-4066-CV, 2006 WL 1900996, at *4 (2d Cir. July 10, 2006).

Celadon does not dispute that it received the plaintiff's cargo in good condition and that the goods were damaged during a fire suffered by a Celadon vehicle. (Pl. 56.1 Statement, ¶¶ 1-4; Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1(b) ("Def. Rule 56.1 Statement"), attached to Mines Decl.). As a result, Celadon is liable for damages to American Pacific under the Carmack Amendment. Celadon has raised no issue of material fact, and American Pacific is entitled to judgment as a matter of law.

C. Damages

Under the Carmack Amendment, the measure of damages is generally the difference between the market value of goods at the

time of delivery and their market value had they arrived in good order at the time when they were meant to be delivered. See Jessica Howard Ltd. v. Norfolk Southern Railroad Co., 316 F.3d 165, 168-69 (2d Cir. 2003); Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc., No. 02 Civ. 5258, 2003 WL 22004895, at *12 (S.D.N.Y. Aug. 22, 2003), vacated and remanded on other grounds, 391 F.3d 77 (2d Cir. 2004). In this case, the appropriate measure of damages is the invoice value of the cargo, minus its salvage value. See Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc., 318 F.3d 458, 461 (3d Cir. 2003).

With respect to American Pacific's survey costs, a party may recover incidental damages if "[those damages] were foreseeable and within the contemplation of the parties at the time the contract was made . . . . This is the common law rule of Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), and it has been rigorously applied by American courts in Carmack Amendment cases." Project Hope, 2001 WL 1875854, at *2 (internal quotations and citations omitted). The cost of salvage, which here includes the survey as well as management of the competitive bid process, is a foreseeable cost within the contemplation of sophisticated actors parties in the shipping industry and must be included in the damages awarded to American Pacific. See International Ore & Fertilizer Corp. v. SGS Control Services, Inc., 828 F. Supp. 1098, 1102 (S.D.N.Y. 1993).

While the cargo owner has a duty to mitigate damages, the burden to show failure to mitigate rests on the carrier. See

7

Ingersoll Milling Machine Co. v. M/V Bodena, 829 F.2d 293, 308 n.9 (2d Cir. 1987); Dessert Service, Inc. v. M/V MSC Jamie/Rafaela, 219 F. Supp. 2d 504, 509 (S.D.N.Y. 2002), Celadon argues that American Pacific failed to mitigate damages by accepting too low a price for the 2,375 salvaged cartons. (Mines Aff., ¶¶ 3-4). The defendant also contends that 142 of the remaining 955 cartons that the plaintiff claims were destroyed in the accident were actually delivered to American Pacific in saleable condition some five months later. (Mines Aff., ¶ 3). Neither of these arguments has merit.

The plaintiff acknowledges that on November 24, 2003, Celadon delivered 2,525 cartons of cotton sheets to American Pacific's facility in Grove City, Ohio from Kaltex Home in Queretaro, Mexico. (Bill of Lading dated Nov. 17, 2003, attached as Exh. 9 to Reply Declaration of Jayson Martin dated April 20, 2006, at 1-2 ("Martin Reply Decl.")). However this is clearly a new, separate shipment unrelated to the June 6 shipment. (Martin Reply Decl. ¶ 5, Exh.s 9-12). A report by MTI Inspection Services shows that American Pacific received 142 water-damaged cartons on November 24, 2003, and, while Celadon claims those cartons were actually part of the June 6 shipment (Martin Reply Decl. ¶ 3 & Exh. 8; Mines Aff., ¶ 3), the bill of lading is consistent with an attached Kaltex invoice showing American Pacfic's purchase of 2,525 new cartons from Kaltex on November 17, 2003. (Martin Reply Decl., Exhs. 9 & 10). Because the November 24 shipment clearly contained only the cartons that were purchased directly from Kaltex Home in that month, Celadon's

allegation that the 142 water-damaged cartons were part of the June 6 shipment cannot be correct.

Celadon's claim that American Pacific did not receive fair salvage value for the damaged cargo because "most of the [June 6] shipment was probably not damaged" (Severs Decl., ¶ 4) is also without merit. In response to Celadon's claims, American Pacific has offered the detailed report of an experienced marine surveyor on the value of the damage and subsequent mitigation. The DLS report includes accounts of the accident and subsequent handling of the cargo, the process of salvaging and selling the damaged cargo, and the tally of the cargo. (DLS Report at 3). Without any evidence demonstrating that the damaged cargo was undervalued at the salvage sale, the conclusory allegations proffered by Celadon are insufficient to defeat American Pacific's motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

Conclusion

For the reasons set forth above, American Pacific's motion for summary judgment is granted. The Clerk of Court shall enter judgment in favor of American Pacific and against Celadon in the amount of $72,023.93, which consists of the invoice price of the cargo ($88,232.79) minus the salvage value ($19,156.00) plus the survey costs ($2.947.14).

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         August 9, 2006

Copies mailed this date:

James J. Ruddy, Esq.
McDermott & Radzik, LLP
Wall Street Plaza
88 Pine Street - 21st Floor
New York, New York 10005

Steven J. Mines, Esq.
Law Offices Dubow & Smith
860 Grand Concourse, Suite 1N
Bronx, New York 10451